# 26-

# United States Court of Appeals

*for the*

# Second Circuit

In re THE DIOCESE OF BUFFALO, N.Y.,

*Debtor*,

OFFICIAL COMMITTEE OF UNSECURED CREDITORS,

*Petitioner,*

– v. –

WILLIAM K. HARRINGTON, UNITED STATES TRUSTEE FOR REGION 2,

*Respondent.*

ON PETITION FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NEW YORK
No. 20−10322−CLB

## PETITION FOR PERMISSION TO APPEAL
## UNDER 28 U.S.C. § 158(d)(2)(A)

ILAN D. SCHARF
KAREN B. DINE
JEFFREY M. DINE
PACHULSKI STANG ZIEHL & JONES LLP
*Attorneys for Petitioner*
1700 Broadway, 36th Floor
New York, New York 10019
(212) 561-7700

COUNSEL PRESS
A Proceed Service
The Appellate Experts®

(800) 4-APPEAL • (393603)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioner the Official Committee of Unsecured Creditors is an official committee of unsecured creditors appointed by the Office of the United States Trustee pursuant to sections 1102(a) and 1102(b) of the Bankruptcy Code to serve in the Chapter 11 of the Diocese of Buffalo, N.Y.  The Committee is not subject to the disclosure provisions of Rule 26.1.

The Diocese of Buffalo, N.Y. is a New York not-for-profit corporation formed by Special Act of the New York State Legislature without capital stock; the Diocese of Buffalo, N.Y. has no parent corporation nor is there any publicly held corporation owning 10% or more of its stock.

*/s/ Ilan D. Scharf*
Ilan D. Scharf
*Counsel for Appellant the Official*
*Committee of Unsecured Creditors*

i

4925-9795-9853.12 18502.002

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ..........................................................i

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY STATEMENT ......................................................................1

FACTS NECESSARY TO UNDERSTAND THE QUESTIONS
    PRESENTED...........................................................................................10
    A.    The Diocese's Bankruptcy .................................................10
    B.    Procedural History of the Orders ......................................11
    C.    Proposed Third-Party Releases .........................................12

QUESTIONS PRESENTED...................................................................16

RELIEF SOUGHT ...................................................................................18

BASIS FOR THE RELIEF SOUGHT......................................................18
    A.    The Opt-In Order Presents Multiple Questions Of Law as To
        Which There is No Controlling Circuit-Level or Supreme Court
        Precedent .............................................................................19
    B.    The Opt-In Order Involves Conflicting Decisions Within this
        Circuit ..................................................................................21
    C.    The Opt-In Order Involves a Matter of Public Importance ................22
    D.    An Immediate Appeal from The Opt-In Order Will Materially
        Advance the Progress of The Case......................................23

CONCLUSION......................................................................................24

CERTIFICATE OF COMPLIANCE.......................................................25

CERTIFICATE OF SERVICE ...............................................................26

ii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Blausey v. United States Tr.*,
    552 F.3d 1124 (9th Cir. 2009) ......................................................19

*Harrington v. Purdue Pharma L.P.*
    603 U.S. 204 (2024)................................................... 2, 16, 20

*In re Azul S.A.*
    676 B.R. 277 (Bankr. S.D.N.Y. 2026) ......................................22

*In re Diocese of Rochester*
    No. 19-20905 (PRW) (Bankr. W.D.N.Y. Mar. 14, 2025).............................7

*In re GOL Linhas Aéreas Inteligentes S.A*
    No. 26-49 (2d Cir.) ................................................. 7, 20

*In re GOL Linhas Aéreas Inteligentes S.A.*
    675 B.R. 125 (S.D.N.Y. 2025) ........................................ 7, 8, 21

*In re Roman Cath. Diocese of Syracuse*
    667 B.R. 628 (Bankr. N.D.N.Y 2024)...........................................6

*In re Roman Cath. Diocese of Syracuse, N.Y.*
    No. 20-30663 (WAK) (Bankr. N.D.N.Y. Dec. 23, 2024) ........................6, 7

*In re Spirit Airlines, Inc.*
    668 B.R. 689 (Bankr. S.D.N.Y. 2025) ......................................22

*In re Tonawanda Coke Corp.*
    662 B.R. 220 (Bankr. W.D.N.Y. 2024).......................................21

*Mesabi Metallics Co. v. B. Riley FBR, Inc. (In re Essar Steel Minn. LLC)*
    No. 19-397 (LPS), 2020 U.S. Dist. LEXIS 116888 (D. Del. July 1, 2020)..22

*Weber v. U.S. Tr.*
    484 F.3d 154 (2d Cir. 2007) ............................................... 18, 20

iii

## **STATUTES**

11 U.S.C. § 1102(a) ..............................................................................................10

11 U.S.C. § 1102(b) ..............................................................................................10

11 U.S.C. § 1129 .....................................................................................................2

28 U.S.C. § 158(d)(2)......................................................................................... 1, 18

28 U.S.C. § 158(d)(2)(A) .....................................................................................18

28 U.S.C. § 158(d)(2)(A)(i) ......................................................................... 18, 19, 22

28 U.S.C. § 158(d)(2)(A)(iv) ...............................................................................23

## **OTHER AUTHORITIES**

New York's Child Victims Act (CPLR 214-g) .........................................................5

## **RULES**

Fed. R. Civ. P. 23(e)................................................................................................4

iv

4925-9795-9853.12 18502.002

The Official Committee of Unsecured Creditors (the "Committee") in the bankruptcy case of the Diocese of Buffalo, N.Y. (the "Diocese"), by this petition ("Petition") pursuant to 28 U.S.C. § 158(d)(2), Rule 8006 of the Federal Rules of Bankruptcy Procedure, and Rules 5 and 6(c) of the Federal Rules of Appellate Procedure, by and through its undersigned counsel, hereby requests authorization to bring directly to this Court its appeal of two decisions of the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court"):  (i) the *Decision & Order* [D.I. 4616] (the "Opt-In Order" or "Opt-In Ord." [App'x Ex. 1], and (ii) *Decision & Order Denying Motions to Reconsider, Granting Motion for Request for Certification [of Direct Appeal* [D.I. 4694] (the "Reconsideration Order" or "Recon. Ord.") [App'x Ex. 2], and, together with the Opt-In Order, the "Orders").

The Committee joins in the Petition filed by the Diocese in its appeal of the Orders with respect to the issues presented as well as the grounds for certification under the statute.[1]

## PRELIMINARY STATEMENT

This appeal raises critical questions about the definition of "consent" to the release of third parties as part of plans of reorganization under Chapter 11 of

---

[1] Counsel for respondent William K. Harrington, the United States Trustee for Region 2 (the "U.S. Trustee") has stated that the U.S. Trustee will not oppose the Petition for direct appeal but will file a response.

4925-9795-9853.12 18502.002

the Bankruptcy Code pursuant to 11 U.S.C. § 1129.  The crux of this issue on this appeal is whether (a) releases of third-parties ("Third-Party Releases") in such a plan may be considered consensual if the releasing creditor does not affirmatively indicate that they are opting-out of the proposed release (an "Opt-Out"), or (b) if consent requires an affirmative written consent to the release (an "Opt-In") procedure.

The Supreme Court in *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024) ("*Purdue Pharma*") required creditor consent to Third-Party Releases but left open the question of just what constitutes "consent."  The issue of Opt-Out versus Opt-In consent has subsequently split the lower courts, including courts in this Circuit, and with the Orders, now among the bankruptcy courts of the Western District of New York.

This case arises in the context of a plan of reorganization intended to resolve tort claims of hundreds of survivors of childhood sexual abuse who have asserted claims in the bankruptcy of a Roman Catholic diocese and in state court against the non-debtor parishes and other non-debtor entities (the "Parishes") of the Diocese.

As the Committee explains below, use of an Opt-Out Procedure satisfies the required consent for the Third-Party Releases.  The Bankruptcy Court, alone among the Second Circuit bankruptcy courts that have considered whether an

2

Opt-Out Procedure provides the necessary consent for Third-Party Releases in diocesan bankruptcies, found that (i) New York law governed the question of whether an Opt-out Procedure sufficed to show consent and (ii) under New York law, "opting out" did not suffice to show assent to the release. The Bankruptcy Court held that silence cannot constitute consent under New York law and that each claimant must therefore provide their affirmative assent to the Third-Party Releases. The Orders thus denied that portion of the Diocese's motion for solicitation of votes (the "Solicitation Motion"),[2] on its proposed joint Plan[3] of reorganization which sought to establish the procedure for voting on the Debtor's proposed Plan, including the release of certain third-party non-debtors, through an opt-out voting mechanism (the "Opt-Out Procedures").

---

[2] *Motion for Entry of Orders: (A)(I) Approving the Forms of Ballots and Establishing Procedures for Voting on Joint Plan of Reorganization and Consenting to Third-Party Releases; (II) Approving Solicitation Packages and Distribution Procedures; and (III) Scheduling a Hearing to Consider Approval of the Disclosure Statement; (B)(I) Approving Disclosure Statement; (II) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of Joint Plan; and (III) Approving the Form, Manner, and Scope of Confirmation Notices; and (C) Granting Related Relief* [D.I. 4343].

[3] *Joint Chapter 11 Plan of Reorganization for The Diocese of Buffalo, N.Y., dated October 1, 2025* [D.I. 4221] (together with all schedules and exhibits thereto, and as may be modified, amended, or supplemented from time to time, the "Plan").

On reconsideration, the Bankruptcy Court maintained its ruling, but granted the Committee's motion for certification of a direct appeal, finding that all of the alternative grounds under 28 U.S.C. §158(d)(2) applied here. Recon. Ord. at 4. The Bankruptcy Court entered its certification for direct appeal of the Orders on May 8, 2026 [D.I. 4784] (the "Bankruptcy Court Certification," App'x Ex. 3).

The Bankruptcy Court erred: New York law does not govern the issue of assent in a federal bankruptcy, and as a matter of federal law, an Opt-Out Procedure is sufficient and appropriate to determine assent to the release, akin to (for example) the opt-out procedures for federal court class actions under Federal Rule of Civil Procedure 23(e). However, even applying New York Law, an Opt-Out Procedure demonstrates consent. Unless corrected, the Bankruptcy Court's error may imperil, and will certainly significantly delay and increase the cost of, the Diocese's reorganization.

As the Bankruptcy Court recognized, all three statutory grounds for this Court to authorize a direct appeal are present here. Recon. Ord. at 4. First, there is no controlling precedent from the Supreme Court or this Court addressing whether and when Opt-Out Procedures can establish creditor consent to Third-Party Releases under *Purdue Pharma.* Second, this is a matter of public importance, both to bankruptcy participants generally, and with respect to

4

4925-9795-9853.12 18502.002

diocesan and other tort-based bankruptcies specifically. Third, decisions of district and bankruptcy courts in this Circuit are in conflict on this issue. Finally, the Court's determination of the questions presented will materially advance the progress of the Diocese's bankruptcy; put simply, the Plan cannot be put out for a vote without resolution of the availability of the Opt-Out Procedures.

Third-Party Releases are a critical element of the resolution of bankruptcy cases largely focused on the resolution and compensation of tort claims relating to childhood sexual abuse, like that of the Diocese. Diocesan bankruptcies arise in the complex and painful emotional context of the resolution of claims of child sexual abuse by clergy and other actors within the Roman Catholic Church over the course of decades. Claims of survivors of abuse, brought under re-opened statutes of limitation under New York's Child Victims Act (CPLR 214-g) and similar statutes in other states, have brought the prospect of closure and some measure of compensatory justice to thousands of victims of abuse. The number of survivor claims and the magnitude of survivor suffering has driven some 41 dioceses and archdioceses in the United States — including 6 of the 12 in the Second Circuit — to file for reorganization under Chapter 11 to (i) collect and segregate meaningful funding to pay survivor claims and (ii) establish under judicial auspices an orderly mechanism (via contribution of funding to a trust

5

4925-9795-9853.12 18502.002

established under the plan with procedures for assessing and paying survivor claims) make such payments.

Settlement funding for resolved diocesan chapter 11 cases comes primarily and in general from three sources: (i) diocesan assets, (ii) assets from non-debtor Parishes and other entities within a diocese, and (iii) buyback by insurers of policies they issued insuring dioceses and their parishes and other diocese-related entities, in return for the termination of their liability or potential liability under such policies. The Plan in this case includes funding from these three sources.

For that reason, the Diocese in its Plan provides for narrowly tailored releases for its Parishes and other entities and the Solicitation Procedures provided for the Opt-Out Procedures, under which the survivor creditors ("Abuse Claimants") would receive notice intended to give them knowledge of the release provisions and their right to Opt-Out. Until the Orders, each of the Bankruptcy Courts in New York hearing diocesan bankruptcy cases and considering this issue found that Opt-Out Procedures such as those proposed in the Plan are sufficient to establish creditor consent to the Third-Party Releases.[4]

---

[4] *See, e.g., In re Roman Cath. Diocese of Syracuse,* 667 B.R. 628, 632-36 (Bankr. N.D.N.Y 2024); Order, *In re Roman Cath. Diocese of Syracuse, N.Y.*, No. 20-30663 (WAK) (Bankr. N.D.N.Y. Dec. 23, 2024), ECF No. 2398 (approving opt-out solicitation procedures); Finding of Fact, Conclusions of Law, & Order (Continued…)

6

4925-9795-9853.12 18502.002

Neither the Supreme Court nor this Court has issued a controlling decision discussing whether and when Opt-Out procedures are sufficient to establish creditor consent to Third-Party Releases. Outside of diocesan bankruptcies, in this Court, the debtors' appeal in *In re GOL Linhas Aéreas Inteligentes S.A.,* No. 26-49 (2d Cir.) ("*GOL Linhas*") is presently in briefing. In *GOL Linhas*, the United States District Court for the Southern District of New York reversed the Bankruptcy Court's decision permitting Opt-Out procedures, finding that Opt-Out procedures did not suffice for creditor consent. *In re GOL Linhas Aéreas Inteligentes S.A.*, 675 B.R. 125, 130-33 (S.D.N.Y. 2025) (reversing bankruptcy court decision permitting Opt-Out procedures and requiring an Opt-In to manifest consent to Third-Party Releases).

The decision from which the Committee appeals in this case presents the same legal question, but in significantly different circumstances than that presented in *GOL Linhas*. Among other things, the proposed Third-Party

---

Confirming First Modified Fifth Amended Joint Chapter 11 Plan of Reorganization, *In re Roman Cath. Diocese of Syracuse, N.Y.*, No. 20-30663 (Bankr. N.D.N.Y. Sept. 26, 2025), ECF No. 3073 (confirming that non-responsive claimants had consented to third-party release provisions); Order, *In re Diocese of Rochester*, No. 19-20905 (PRW) (Bankr. W.D.N.Y. Mar. 14, 2025), ECF No. 3031 (approving opt-out solicitation procedures); Decision & Order Confirming Eighth Amended Joint Chapter 11 Plan of Reorganization, *In re Diocese of Rochester*, No. 19-20905 (Bankr. W.D.N.Y. Sept. 5, 2025), ECF No. 3379 (confirming that non-responsive claimants had consented to third-party release provisions).

releases in that case were extremely broad and would have applied broadly to all creditors in the case, including even some creditors not entitled to vote on or receive direct notice of the plan. *GOL Linhas*, 675 B.R. at 128. In *GOL Linhas*, the "Releasing Parties" were broadly defined to include, among others, "*all* holders" of Claims and Interests that did not opt-out. *Id.* at127-28, 127 n.1 (emphasis added). Similarly, "Released Parties" was also defined extremely broadly. *Id.* at 127 n.2. In contrast, here, the only claimants who affirmatively asserted claims against the Diocese or a Parish to be released are being asked to grant the releases of those Parishes. *See* Plan § 12.8. Further, in this case, the Plan effectuates channeling injunctions required by insurance buyback agreements pursuant to section 363 of the Bankruptcy Code. Moreover, the contributions of the Parishes will directly benefit the Abuse Claimants and are intended to resolve the claims of the Abuse Claimants against the Diocese and the Parishes. Plan at §§ 4, 8.2, 12.8. Authorization for direct appeal is therefore also appropriate under 28 U.S.C. § 158(d)(2)(A)(ii).

Thus, the Third-Party Releases in this case, differing from those in *GOL Linhas*, are directly related to the settlement of the claims being released.

In consequence, because there is presently no controlling authority in this Circuit or of the Supreme Court, a decision by this Court in *GOL Linhas* may either not resolve the issue in this case, or might apply overbroadly and unjustly

to the circumstances here. Moreover, there are conflicting decisions among the district and bankruptcy courts of this Circuit on this issue. *See* Points A and B.

This is a matter of public importance, both to bankruptcy participants generally, and with respect to diocesan and other tort-based bankruptcies specifically. The manner of determining creditor consent to Third-Party Releases arises with great frequency in Chapter 11 cases post-*Purdue Pharma*, and this Court's guidance, particularly in respect of the nuances in different types of cases and notice procedures, would be of wide importance to bankruptcy participants in this Circuit. *See* Point C.

Finally, the resolution of the question in this case is of vital importance to the approximately 900 Abuse Claimants in the Diocese. Many of the claimants are elderly, and the timely resolution of this issue is key to their receiving compensation that has already been delayed for decades. The Court's determination of the questions presented will materially advance the progress of the Diocese's bankruptcy Plan. If the Bankruptcy Court had not erroneously rejected the Opt-Out Procedures, the Joint Plan would likely be close to confirmation, if not already confirmed. On the other hand, he Bankruptcy Court's imposition of a requirement for Opt-In voting, if affirmed, will mean that the Diocese and the Parishes will have to determine a path forward where they cannot be certain of the release of all claims against them, because it is

simply not realistic to expect 100% of the survivors to participate in the voting in order to exercise an Opt-In. *See* Point D.

If the Opt-In Decision is reversed, the Diocese will be able to proceed with soliciting votes on the Plan without further delay, move this long bankruptcy case towards resolution and distributions to survivors who have long been waiting for resolution of their claims.

## FACTS NECESSARY TO UNDERSTAND
## THE QUESTIONS PRESENTED

### A.    The Diocese's Bankruptcy

On February 28, 2020 (the "Petition Date"), the Diocese filed a petition for relief under chapter 11 in the United States Bankruptcy Court for the Western District of New York (Case No. 20-10322, the "Chapter 11 Case") in the wake of hundreds of lawsuits filed and claims anticipated to be made by survivors of sexual abuse under the New York Child Victims Act (the "CVA") and in anticipation of the assertion of more sexual abuse claims.

On March 12, 2020, the Office of the United States Trustee appointed the Committee pursuant to sections 1102(a) and 1102(b) of the Bankruptcy Code to serve in the Chapter 11 Case.

Over the six years since the Diocese filed for bankruptcy protection under Chapter 11 of title 11 of the United States Code, the Diocese, the Parishes, the Committee, and insurance companies that issued (or allegedly issued), insurance

10

policies to the Diocese and/or the Parishes (the "Settling Insurers") have engaged in vigorous, arm's lengths efforts to achieve a settlement of the Abuse Claimants' claims in the bankruptcy such that the Abuse Claimants can receive compensation for the harm perpetrated on them by the Diocese and its non-debtor Parishes, and the Diocese can emerge from bankruptcy.

In April of 2025, those efforts culminated in a settlement agreement (the "Settlement") between the Committee on the one hand and the Diocese and Parishes on the other, whereby the Parishes and the Diocese would contribute $150 million to the Settlement and Settling Insurers will contribute approximately $176.4 million to the Settlement.

## B.     Procedural History of the Orders

The Debtors filed the Disclosure Statement [D.I. 4222] and Plan [D.I. 4221] on October 1, 2025.  The Debtors filed the Solicitation Procedures Motion [D.I. 4343] on November 7, 2025.

The Committee filed a Statement in Support of the Procedures Motion on December 10, 2025 [D.I. 4411] (the "Committee Statement").

On January 9, 2026, the Bankruptcy Court held a hearing on the Opt-Out Procedures.

11

4925-9795-9853.12 18502.002

On February 27, 2026, the Bankruptcy Court entered the Opt-In Order. The Debtor and the Committee each moved for reconsideration of the Opt-In Order on March 13, 2026 [D.I.s 4655, 4657].

On March 22, 2026, the Bankruptcy Court held a hearing on the motions for reconsideration. On April 3, 2026, the Bankruptcy Court entered the Reconsideration Order denying the motions for reconsideration but granting the Committee's request for certification of its appeal to the Second Circuit Court of Appeals.

On April 17, 2026, the Diocese and the Committee each timely filed a notice of appeal of the Opt-In Decisions [D.I.s 4722, 4723].[5]

On May 8, 2026, the Bankruptcy Court entered the Certification of Direct Appeals to the Court of Appeals for the Second Circuit [D.I. 4784].

### C. Proposed Third-Party Releases

Through the Plan, the Diocese is seeking to release the Diocese and the Parishes which contribute Insurance Claims and/or funds to the Settlement Trust. The parties granting those Third-Party Releases will be the Abuse Claimants (in Class 6 of the Plan).

---

[5] The Committee's appeal has been docketed in the District Court at Case No. 1:26-cv-807 (W.D.N.Y.). The District Court has adjourned proceedings until the Court addresses the Petition [D.I. 7].

12

As proposed in the Plan, consent to the Third-Party Releases is conclusively presumed if an Abuse Claimant (i) submits an Abuse Claim Ballot accepting the Plan or (ii) either does not vote or submits an Abuse Claim Ballot rejecting the Plan and fails to either (a) separately indicate on such Abuse Claim Ballot rejecting the Plan that consent to the releases and injunctions contemplated in the Plan is being withheld, or (b) files a timely written objection to confirmation of the Plan. For avoidance of doubt, all Abuse Claimants shall be deemed "Consenting" Abuse Claimants, unless the Abuse Claimant affirmatively refuses to grant the Third-Party Releases or objects to the Plan.

In this case, each Abuse Claimant (or, if represented, their counsel) who filed a claim in the Diocese's bankruptcy case, or who filed an action in state court against a Parish of the Diocese, will receive direct notice of the Plan and the Third-Party Releases provided for in the Plan.

The Third-Party Releases and their impact on Abuse Claims are described in the "Summary of the Plan" in the Disclosure Statement, which sets out in bold the consequences the failure to opt-out of or object to the Third-Party Releases:

> **Each Abuse Claimant has the ability to exempt itself from the releases and channeling injunction provisions of the Plan relating to the Participating Parties by affirmatively withholding consent for such releases and injunctions on the Abuse Claim Ballot. By indicating a withholding of consent, however, such Abuse Claimant will be deemed a Non-Participating Class 6 Claimant and will be**

13

4925-9795-9853.12 18502.002

**subject to the treatment set forth in Section 4.3 of the Plan.**

**You may be deemed to consent to releases to third parties under the Plan. Consenting Class 6 Claimants under the Plan are deemed to have released the Diocese and the Participating Parties pursuant to Section 12.8 of the Plan, and Consenting Class 6 Claims are subject to a channeling injunction pursuant to Section 12.3 of the Plan. A Consenting Class 6 Claimant is any holder of an Abuse Claim who has not either (i) affirmatively indicated on their Abuse Claim Ballot that they are withholding their consent to the releases and injunctions provided for in the Plan with respect to the Protected Parties; or (ii) Filed a timely objection to confirmation of the Plan indicating that they are withholding their consent to the releases and injunctions provided for in the Plan with respect to the Protected Parties.**

Disclosure Statement Art. 1(A) (emphasis in original).

Additionally, the Ballot for Class 6 Abuse Claims describes, in bold type at the top of the Ballot, the Third-Party Releases and the Opt-Out Provisions — including the consequences of silence:

**BALLOT FOR: CLASS 6 – Abuse Claims**

**IMPORTANT NOTICE REGARDING RELEASES: IF YOU DECLINE TO VOTE ON THE PLAN OR VOTE TO REJECT THE PLAN AND DO NOT CONSENT TO THE RELEASE OR CHANNELING INJUNCTION, YOU MUST MAKE THE OPT OUT ELECTION ON THIS BALLOT. UNLESS YOU MAKE THE OPT OUT ELECTION IN "ITEM 3" ON THIS BALLOT OR OBJECT TO CONFIRMATION OF THE PLAN INDICATING THAT YOU DO NOT CONSENT**

14

4925-9795-9853.12 18502.002

**TO THE RELEASES AND INJUNCTIONS PROVIDED IN THE PLAN, AND IF THE PLAN BECOMES EFFECTIVE, YOU WILL BE DEEMED TO CONSENT TO THE RELEASES AND CHANNELING INJUNCTION, REGARDLESS OF WHETHER YOU VOTE TO ACCEPT, REJECT OR DECLINE TO VOTE ON THE PLAN.**

Solicitation Motion Exhibit A-2 (emphases in original).

As the Committee argued below, the Opt-Out Procedures are appropriate under *Purdue Pharma* because (i) as other Bankruptcy Courts in this Circuit have found, the Opt-Out Procedures satisfy due process requirements for giving effective consent; (ii) abuse claimants with pending cases in state court will receive individual notice of the releases; (iii) the Committee as fiduciary negotiated the Opt-Out Procedures, and the Committee and claimants' individual counsel support the Opt-Out Procedures and are charged with looking out for the abuse survivors' interests; (iv) the Opt-Out Procedures suffice to show consent under applicable law; and (v) requiring that abuse claimants affirmatively Opt-In may be retraumatizing and psychologically difficult or impossible. Committee Statement at 6-13. Notwithstanding the Diocese's and Committee's evidence and argument, the Bankruptcy Court denied the Solicitation Motion on its view that Opt-Out Procedures did not suffice to determine creditor consent to the Third-Party Releases. The Committee contends that the Orders are erroneous and should be reversed.

15

4925-9795-9853.12 18502.002

## QUESTIONS PRESENTED

The Orders and the Bankruptcy Court's explanation of its grounds for certifying the Orders for direct appeal encompasses the following questions:[6]

1. May a Bankruptcy Court determine that a release in favor of a non-debtor provided for in a plan of reorganization pursuant to Chapter 11 of the Bankruptcy Code is consensual, as contemplated by the Supreme Court in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), where notice of such release is provided to the releasing creditor, such creditor is provided an opportunity to opt-out of such release and such releasing creditor does not exercise the right to opt-out of granting such release.

2. Did the Bankruptcy Court err in determining that a reorganization plan in Chapter 11 can release claims against third parties only where creditors affirmatively "opt-in" to such releases, and that an opportunity to "opt-out" of a settlement cannot suffice to establish consent to such a release?

3. Did the Bankruptcy Court err by determining that, in order for the third-party releases to be consensual, the survivors of childhood sexual abuse who filed proofs of claim in the Diocese's bankruptcy case (the "Releasing

---

[6] *See The Official Committee of Unsecured Creditors' Designation of the Record on Appeal and Statement of Issues on Appeal* filed May 1, 2026 [D.I. 4767].

Claimants") must be required to affirmatively opt-in to grant the Third-Party Releases?

4. Did the Bankruptcy Court err by determining that it must look exclusively to state law to address the question of whether the Third-Party Releases are consensual?

5. Did the Bankruptcy Court err by determining that the laws of the State of New York apply to determine whether each and every one of the Third-Party Releases are consensual?

6. Did the Bankruptcy Court err by determining that, under New York law, the Third-Party Releases are not consensual?

7. Did the Bankruptcy Court err by determining that, under New York law, silence cannot be consent to Third-Party Releases, where the Releasing Claimants will have received direct notice of the Third-Party Releases and will have been provided an opportunity to opt-out of granting those Third-Party Releases?

8. Did the Bankruptcy Court err by determining that, if federal common law applies to the question of whether the Third-Party Releases are consensual, those proposed releases are not consensual?

9. Did the Bankruptcy Court err in denying the Diocese's Motion for Reconsideration of the Opt-In Decision and Order [D.I. 4654, 4655]?

17

4925-9795-9853.12 18502.002

## RELIEF SOUGHT

The Committee asks this Court to authorize the direct appeal of the Opt-In Decisions pursuant to 28 U.S.C. § 158(d)(2) so that the Court may reverse the Opt-In Decisions.

## BASIS FOR THE RELIEF SOUGHT

Section 158(d)(2)(A)(i) permits the parties to appeal a bankruptcy court's order directly to the governing U.S. Circuit Court of Appeals if the bankruptcy court certifies any one of four circumstances, including, *inter alia*, that (i) the order involves a question of law as to which "there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States," (ii) the order "involves a matter of public importance," (iii) the Orders require the resolution of conflicting decisions, or (iv) "an immediate appeal . . . may materially advance the progress of the case," and the court of appeals authorizes the direct appeal. 28 U.S.C. § 158(d)(2)(A).

This Court has stated that it may exercise jurisdiction under 28 U.S.C. § 158(d)(2)(A) over "appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation." *Weber v. U.S. Tr.*, 484 F.3d 154, 158 (2d Cir. 2007). Moreover, the Second Circuit will consider a

18

request for direct appeal from a bankruptcy court where there is a conflict that "creates uncertainty in the bankruptcy courts." *Id.* at 161.

The Bankruptcy Court succinctly explained why certification was appropriate:

> Here, a direct appeal is warranted under all of the alternative grounds stated in the statute. The requirements of consent have yet to be resolved by either the Court of Appeals or the Supreme Court. Indeed, in *Purdue Pharma,* the Supreme Court chose not "to express a view on what qualifies as a consensual release." 603 U.S. at 226. Moreover, as shown by the exigencies of the present case, the issue of consent is a matter of public importance. A direct appeal is further justified by the conflicting decisions that Bankruptcy Courts have rendered in this circuit and across the country. Additionally, a decision on any appeal would materially advance the progress of this case, which has already been open for more than six years. Otherwise, we face the prospect of multiple layers of appeal that might cause even greater delay.

Reconsideration Order at 4. The Bankruptcy Court having determined that all four of these alternative grounds for certification exist, this Court has discretion to grant the request, looking to the same standard. *See Blausey v. U.S. Tr.*, 552 F.3d 1124, 1129, 1131 (9th Cir. 2009).

### A. The Opt-In Order Presents Multiple Questions Of Law as To Which There is No Controlling Circuit-Level or Supreme Court Precedent

There is no controlling Circuit-level or Supreme Court precedent that resolves presented by the Committee's appeal. *See* 28 U.S.C. § 158(d)(2)(A)(i).

19

Certification is appropriate where, as here, the appeal would resolve a "knotty" legal question. *Weber*, 484 F.3d at 159.

The question of what constitutes consent to a third-party release in a Chapter 11 plan was expressly left open by the Supreme court in *Purdue Pharma*. *Purdue Pharma*, 603 U.S. at 226.

The issue of consent to Third-Party Releases is presently in briefing before this Court in *GOL Linhas*.[7] But this case (as with other diocesan and other mass-tort cases) is very different from *GOL Linhas*, which arises in a fundamentally contractual, commercial and business circumstance. Consideration of this appeal in tandem with *GOL Linhas* will allow the Court, as the Court may find appropriate, to establish controlling precedent that recognizes the nuanced differences affecting the determination of consent in varied circumstances.

The questions presented address the issues raised in determining whether Opt-Out Procedures suffice to show consent to Third Party Releases, in essence:

- Whether state law or federal law governs the question of whether the Opt-Out Procedures demonstrate consent in

---

[7] Respondent's brief in *GOL Linhas* is due on July 22, 2026. So-Ordered Scheduling Notification, *In re GOL Linhas Aéreas Inteligentes S.A.,* No. 26-49 (2d Cir. May, 14, 2026), ECF No. 60.

4925-9795-9853.12 18502.002

federal bankruptcy cases where parties are seeking

confirmation of a plan under the standards of the

Bankruptcy Code;

- Whether New York or federal law bar the Opt-Out Procedures where both New York and federal law permit silence to be considered in certain circumstances, including the one at bar.

- Whether Survivors receiving direct notice of the Third-Party Releases are required to affirmatively Opt-In or whether their not responding to clear direct notice of the consequences of a failure to Opt-Out constitutes consent?

These are questions of law as to which there is no controlling precedent and are very much the sort of purely legal questions that this Court found to be appropriate in *Weber*.

## B. The Opt-In Order Involves Conflicting Decisions Within this Circuit

The Bankruptcy Court's decision conflicts with other Bankruptcy Court decisions considering Opt-Out Procedures in diocesan bankruptcies within this Circuit. *See* supra n.7. Other decisions of courts in this Circuit are also in conflict. *Compare, e.g. GOL Linhas,* 675 B.R. 125 and *In re Tonawanda Coke Corp.*, 662 B.R. 220 (Bankr. W.D.N.Y. 2024) (Bucki, C.B.J.) (disapproving Opt-Out Procedures) with *In re Spirit Airlines, Inc.*, 668 B.R. 689, 704-05

21

4925-9795-9853.12 18502.002

(Bankr. S.D.N.Y. 2025) (approving Opt-Out Procedures). Even after Judge Cote in the Southern District disapproved of Opt-Out Procedures in *GOL Linhas*, Judge Lane in the Southern District Bankruptcy Court approved a reorganization plan including Opt-Out Procedures. *In re Azul S.A*, 676 B.R. 277 (Bankr. S.D.N.Y. 2026) (relying on *Spirit Airlines* and discussing *GOL Linhas*). The issue of Opt-Out Procedures arises in many bankruptcy cases and in differing factual matrices. This Court's guidance will give clarity across the board to this vital and consistently-arising issue. Authorization for direct appeal is therefore also appropriate under 28 U.S.C. § 158(d)(2)(A)(ii).

### C. The Opt-In Order Involves a Matter of Public Importance

A matter is of "public importance" when it "transcend[s] the litigants and involve[s] a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Mesabi Metallics Co. v. B. Riley FBR, Inc. (In re Essar Steel Minn. LLC)*, No. 19-397 (LPS), 2020 U.S. Dist. LEXIS 116888, at *16–17 (D. Del. July 1, 2020) (internal quotation marks omitted); *see* 28 U.S.C. § 158(d)(2)(A)(i).

As the Bankruptcy Court recognized, this case involves a matter of public importance. The issue of what constitutes consent to Third-Party Releases is being raised in cases throughout the country as debtors pursue plans of

4925-9795-9853.12 18502.002

reorganization containing Third-Party Releases. And as discussed above, this Court is currently considering a similar issue in *GOL Linhas.*

### D. An Immediate Appeal from The Opt-In Order Will Materially Advance the Progress of The Case

The prompt resolution of this appeal will materially advance the progress of this case. *See* 28 U.S.C. § 158(d)(2)(A)(iv). The stakes in this appeal are so high as to ensure that it will reach this Court of Appeals in any circumstance, and the issues are essentially purely legal, such that taking appeal through the District Court will not provide any additional resolution of any factual issues or give more clarity to legal issues. Direct appeal will simply accelerate the final appellate resolution of the important threshold issue of what constitutes consent by the Abuse Claimants for the releases of third parties making significant contributions to the Join Plan.

Moreover, if direct appeal is denied, and this Court ultimately directs Opt-In Procedures, the Debtor may not be able to confirm the Plan requiring that the Debtor start anew with a plan process, further delaying any recoveries to Abuse Claimants.

Further, the adverse impact of this case on almost 900 Survivors, many of whom have lawsuits, including against third parties proposed to be released, that have been placed in limbo and stayed by the pendency of this case will be further extended.

23

On the other hand, if this Court's review results in affirmance of the Opt-In Order, a direct appeal would provide earlier clarity to the parties of a need to seek other paths to resolve this case, which may take substantially longer.

## CONCLUSION

For the foregoing reasons, the Committee's Petition for Authorization to Appeal the Opt-In Decisions to this Court should be granted.

Dated:  June 5, 2026                                 Respectfully submitted,


                                                     */s/   Ilan D. Scharf*
                                                     **PACHULSKI STANG ZIEHL & JONES LLP**
                                                     Ilan D. Scharf, Esq.
                                                     Karen B. Dine, Esq.
                                                     Jeffrey M. Dine, Esq.
                                                     1700 Broadway, 36th Floor
                                                     New York, New York 10019
                                                     Telephone:  (212) 561-7700
                                                     Facsimile:  (212) 561-7777
                                                     E-mail:      ischarf@pszjlaw.com
                                                                    kdine@pszjlaw.com
                                                                    jdine@pszjlaw.com

                                                     *Counsel for Appellant the Official Committee of Unsecured Creditors*

24

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 5(c) and Fed. R. App. P. 32(f), this document contains 5,197 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman with 14-point font.

Dated:  <u>June 5, 2026</u>              PACHULSKI STANG ZIEHL & JONES LLP

<u>/s/   Ilan D. Scharf</u>
Ilan D. Scharf
*Counsel for Appellant the Official*
*Committee of Unsecured Creditors*

4925-9795-9853.12 18502.002

# CERTIFICATE OF SERVICE

I certify that on June 5, 2026, one copy of the foregoing was served via

United Postal Service Priority Mail on the parties listed below:

Bond, Schoeneck & King, PLLC
Stephen A. Donato, Esq.
Charles J. Sullivan, Esq.
Grayson T. Walter, Esq.
Thomas W. Simcoe, Esq.
Gregory J. McDonald, Esq.
Brendan M. Sheehan, Esq.
One Lincoln Center
Syracuse, NY 13202
Telephone No.: (315) 218-8000
csullivan@bsk.com
gwalter@bsk.com
Sdonato@bsk.com

*Counsel for The Diocese of Buffalo, N.Y.*

Office of the U.S. Trustee
Joseph W. Allen, Esq.
Olympic Towers
300 Pearl Street, Suite 401
Buffalo, NY 14202
Telephone No.: (716) 551-5541

*Counsel for Office of the United States Trustee*

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq.
1900 Bausch and Lomb Place
Rochester, NY 14604
Telephone No.: (585) 987-2800
tlyster@woodsoviatt.com

*Counsel for Parish Steering Committee*

Elsaesser Anderson, CHTD
J. Ford Elsaesser, Esq.
320 East Neider Ave., STE 102
Coeur d' Alene, ID 83815
Telephone No. (208) 667-2900

*Counsel for Parish Steering Committee*

26

4925-9795-9853.12 18502.002

Jeff Anderson & Associates, P.A.
Jeffrey R. Anderson, Esq.
Michael G. Finnegan, Esq.
Stacey J. Benson, Esq.
366 Jackson Street, Suite 100
St. Paul, MN 55101
Telephone No.: (651) 227-9990
mike@andersonadvocates.com
stacey@andersonadvocates.com

*Certain Abuse Claimants*

Steve Boyd, PC
Stephen Boyd, Esq., of counsel
2969 Main St., Suite 100
Buffalo, NY 14214
sboyd@steveboyd.com

*Certain Abuse Claimants*

Lipsitz Green Scime Cambria
Amy C. Keller, Esq., of counsel
42 Delaware Avenue, Suite 120
Buffalo, NY 14202
akeller@lglaw.com

*Certain Abuse Claimants*

Dated:  June 5, 2026


*/s/ Ilan D. Scharf*
 Ilan D. Scharf

27

APPENDIX

i

# TABLE OF CONTENTS

**Page**

Exhibit 1 to Petition for Permission to Appeal -
Decision and Order of the Honorable Carl L.
Bucki, Notice of Entry and Notice of Recipients,
dated February 27, 2026 ........................................ A-1

Exhibit 2 to Petition for Permission to Appeal-
Decision and Order of the Honorable Carl L.
Bucki, Notice of Entry and Notice of Recipients,
dated April 3, 2026 ................................................ A-16

Exhibit 3 to Petition for Permission to Appeal-
Certification of Direct Appeals to the Court of
Appeals for the Second Circuit, Notice of Entry
and Notice of Recipients, dated May 8, 2026........ A-25

A-1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------
In re
     THE DIOCESE OF BUFFALO, N.Y.,          BK 20-10322 CLB


               Debtor.                    <u>DECISION & ORDER</u>
---------------------------------------------------------

            Bond, Schoeneck & King, PLLC
            Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
            Grayson T. Walter, Esq., Sara C. Temes, Esq.
            Andrew S. Rivera, Esq., of counsel
            One Lincoln Center
            Syracuse, New York 13202-1355
            Attorneys for The Diocese of Buffalo, N.Y.

            Pachulski Stang Ziehl & Jones LLP
            Ilan D. Scharf, Esq., James I. Stang, Esq.,
            Iain A.W. Nasitir, Esq., Karen B. Dine, Esq., of counsel
            780 Third Avenue, 34th Floor
            New York, New York 10017
            Attorneys for Official Committee of Unsecured Creditors

            Office of the U.S. Trustee
            Joseph W. Allen, Esq., Jill M. Zubler, Esq., of counsel
            Olympic Towers
            300 Pearl Street, Suite 401
            Buffalo, New York 14202

            Jeff Anderson & Associates, PA
            Jeffrey R. Anderson, Esq., Stacey Benson, Esq.,
            Michael G. Finnegan, Esq., of counsel
            366 Jackson Street, Suite 100
            Saint Paul, Minnesota 55101
            Attorneys for Various Claimants

            Steve Boyd, PC
            Stephen Boyd, Esq., of counsel
            2969 Main St., Suite 100
            Buffalo, New York 14214
            Attorneys for Various Claimants

A-2

BK20-10322CLB                                                                  2

Dan Chiacchia Attorneys, PLLC
Daniel J. Chiacchia, Esq., of counsel
5113 South Park Avenue
Hamburg, New York 14075
Attorneys for Various Claimants

Merson Law, PLLC
Matthew G. Merson, Esq., of counsel
950 Third Avenue, 18th Floor
New York, New York 10022
Attorneys for Various Claimants

Woods Oviatt Gilman LLP
Timothy P. Lyster, Esq., of counsel
1900 Bausch & Lomb Place
Rochester, New York 14604
Co-Counsel for Parish Steering Committee

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

In *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 218 (2024), the Supreme
Court held that except for cases involving asbestos liability, nothing in the Bankruptcy
Code endows the Bankruptcy Court with the power "to discharge the debts of a
nondebtor without the consent of affected claimants." However, the decision did not
"call into question *consensual* third-party releases offered in connection with a
bankruptcy reorganization plan." *Id*. at 226. The present dispute involves the
requirements for an expression of consent. Must creditors "opt-in" to a release of third
parties, or may a reorganization plan impose a release from all creditors except those
who affirmatively "opt-out" of that outcome?

The Diocese of Buffalo, N.Y., filed a petition for relief under Chapter 11 of the
Bankruptcy Code on February 28, 2020. Thereafter, more than 900 claims were filed

A-3

BK20-10322CLB                                                                                                                    3

by individuals seeking damages for alleged instances of sexual abuse. After months of negotiation and with the assistance of several mediators, a tentative settlement was reached among the Diocese, the Official Committee of Unsecured Creditors (the "Committee"), multiple insurance companies, and a steering committee of parishes. This settlement then became an essential component of a joint reorganization plan that the debtor and the Committee filed on October 1, 2025. Among other provisions, the proposed plan contemplates the grant of third-party releases for the benefit of parishes and other entities affiliated with the Diocese.

On November 7, 2025, the Diocese filed a motion seeking guidance with regard to various procedural issues, including processes for approving a disclosure statement, for voting on a plan and for giving consent to third-party releases. After hearing counsel on December 11, 2025, we resolved that the most expeditious approach was to first determine the requirements for consent by creditors. The Court invited briefing on this issue and reserved time for oral argument on January 9, 2026. Since that date, the Court has also received and reviewed various post-hearing submissions, the most recent of which was filed on February 13, 2026.

The debtor and the Committee contend that if creditors receive adequate disclosure and notice, consent can be established by the absence of opposition to third-party releases. Thus, the plan proponents have suggested a confirmation ballot that allows creditors to "opt-out" of the contemplated releases. Under this scheme, if creditors are silent, their consent would be assumed. The Office of the United States Trustee objects. It contends that a release should bind only those creditors who

A-4

BK20-10322CLB                                                                      4

affirmatively "opt-in" to the proposal by giving their explicit consent.

In their submissions, the parties have identified decisions of bankruptcy and district courts relative to the application of "opt-in" versus "opt-out." However, none are precedents that bind this Court. To date, the Second Circuit Court of Appeals has not spoken on the standard for consent under *Harrington v. Purdue Pharma L.P*. Therefore, the present dispute provides the opportunity for a fresh analysis.

Discussion

Chapter 11 of the Bankruptcy Code allows a debtor like the Diocese of Buffalo to propose a plan that will address its own liabilities. But most if not all of the tort victims in this case have claims that they could assert against both the Diocese and other affiliated corporations such as parishes. Meanwhile, the parishes generally relied upon the debtor to provide liability coverage under a self-insurance program that the Diocese operated for the benefit of itself and its affiliates. Although we understand why the Diocese wants a global settlement, the Bankruptcy Code does not here authorize non-consensual relief for anyone other than the Diocese itself. A bankruptcy discharge "releases the debtor from its debts and enjoins future efforts to collect them – even by those who do not assent" to a confirmed plan of reorganization." *Harrington v. Purdue Pharma, L.P.*, 603 U.S. at 221. Generally, however, the statute "reserves this benefit to 'the debtor' – the entity that files for bankruptcy." *Id.* at 221. An extension of this benefit to third parties is possible, but only with the consent of every impacted creditor. *See Id.* at 222.

Except in cases involving asbestos liability, nothing in the Bankruptcy Code even

A-5

contemplates a third-party release. *Harrington v. Purdue Pharma, L.P.*, 603 U.S. at 223. Therefore, authority for such an outcome can only derive from an agreement among affected parties. As we observed in *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024), "any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent."

The Diocese and the Committee argue that Bankruptcy Courts should develop a federal common law that will infer consent from the absence of objection. We disagree. As the Supreme Court observed in *Purdue Pharma*, bankruptcy law does not give to this Court "a roving commission to resolve" all problems of collective liability. 603 U.S. at 220. As a voluntary contract among affected parties, a third-party release "would be governed instead by state law." *In re Tonawanda Coke Corp.*, 662 B.R. at 222.

The debtor is a New York corporation whose principal and only place of business is in this state. Claims against the debtor arose from activities that occurred within the same jurisdiction. For most abuse victims, the current ability to assert claims derives from legislation that the New York State legislature adopted in 2019. *See* Child Victims Act, 2019 N.Y. Sess. Laws c. 11, § 3. Consequently, any third-party releases will address claims that arise under New York law. By reason of these many relationships, the law of New York will set the controlling guidelines for consent.

The longstanding rule in New York is that silence does not constitute consent, except in instances where estoppel might apply. In *More v. New York Bowery Fire Ins. Co.*, 130 N.Y. 537, 545 (1892), the state's highest court stated the applicable

A-6

BK20-10322CLB                                                                                          6

standard:

> "The proper inference from failure to respond to a
> proposition of any kind is that it is rejected or declined.
> A party cannot be held to contract where there is no
> assent. Silence operates as an assent, and creates an
> estoppel, only when it has the effect to mislead."

The debtor and Committee essentially contend that by silence, creditors are estopped from denying their consent to a third-party release. This attempt to find an estoppel is both ineffective as a matter of law and inappropriate as an exercise of bankruptcy process.

Estoppel through silence requires proof of three essential elements: "a duty to speak, a failure to speak and damage to another party directly due to this silence." *LaPorto v. Village of Philmont*, 39 N.Y.2d 7, 12 (1976). *See also* 57 NY Jur 2d, Estoppel § 18 (2011). The victims of abuse are innocent parties who have no obligation to respond to any request for consent, either by reason of some contractual obligation or by reason of any dictate of the Bankruptcy Code. Nor does this Court have any authority to impose such a duty. Without a duty to respond, we find no basis to imply consent by estoppel.

The third requirement for estoppel through silence is the occurrence of "damage directly due to this silence." In other words, the silence must "operate as a fraud on the party who has taken, or neglected to take, some action to his own prejudice in reliance upon it." *More v. New York Bowery Fire Ins. Co.*, 130 N.Y. at 545. Here, an abuse victim makes no representation at all when he or she fails to consent to third-party releases. Without a false representation, there can be no fraud. *See Durland*

A-7

*v. United States*, 161 U.S. 306, 313 (1896); *In re Lokotnicki*, 232 B.R. 583, 587 (Bankr. W.D.N.Y. 1999). Hence, a victim's silence does not allow any presumption of consent.

In its submission dated December 10, 2025, the Diocese argues that the Committee "may provide surrogate consent on behalf of Abuse Claimants, subject to such claimants' ability to countermand the Committee and affirmatively withhold consent." Pursuant to 11 U.S.C. § 1103(c), the Committee may "participate in the formulation of a plan," and may "perform such other services as are in the interest of those represented." However, the enumeration of rights in section 1103(c) does not include anything like the exercise of a power of attorney on behalf of creditors. Upon the formulation of a proposed plan, the right to vote is expressly reserved to "[t]he holder of a claim or interest." 11 U.S.C. § 1126(a). Moreover, because a release of third parties is an action outside the bankruptcy process, any granting of consent is further removed from the authority of the Committee. Simply put, the Committee has no power or right to consent to a third-party release, even if creditors were allowed an opportunity to opt-out of that arrangement.

For reasons stated above, this Court rejects the debtor's call to create a federal common law on the issue of consent. But even if we were to accept this suggestion, any such common law would more appropriately command that creditors affirmatively express their consent for third-party releases. In particular, we agree with the recent analysis by District Judge Cote in *In re GOL Linhas Aéreas Inteligentes S.A.*, ___ B.R. ___, 2025 WL 3456675, at * 5 (S.D.N.Y. 2025), *appeal docketed*, No. 26-49 (2d Cir.

A-8

Jan. 9, 2026). "[T]he general principles of contract law, as embodied in the Restatement of Contracts, establish that, outside of rare exceptions, consent cannot be implied from silence. The third-party releases here are nonconsensual under federal law as well."

Even if consent could be inferred from silence, an "opt-out" procedure is impractical and a disregard of the interests of decedent estates. The debtor and the Committee have acknowledged that an unknown number of claimants have died. A dead person has no ability to consent to anything. No assurance of consent can derive from a notice sent to deceased creditors at the address provided in his or her proof of claim or on the current mailing matrix. Rather, with regard to claims of deceased victims, consent must be obtained from a duly appointed executor or administrator of the estate. Not knowing the identity of deceased claimants, we have no awareness of whether any executor or administrator has yet been appointed. The absence of a response is not a reliable indicator of consent, but might instead reflect the claimant's own passing. For victims who have died, an "opt-in" ballot provides a pragmatic way to assure that his estate representative has approved the release of third parties.

An "opt-in" procedure maintains the spirit of at least two important bankruptcy guidelines. The first is the so-called Chapter 7 test for plan confirmation under 11 U.S.C. § 1129. Subdivision (a)(7) of this section includes the general rule that the Court can confirm a plan only if each holder of a claim or interest shall "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so

A-9

receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7)(A)(ii). Creditors may waive this requirement only through acceptance of the plan. 11 U.S.C. § 1129(a)(7)(A)(i). Acceptance, however, requires submission of an affirmative ballot and is not implied from silence. In like fashion, acceptance of a third-party release should require an affirmative consent to this extra-statutory relief.

An affirmative expression of consent will also maintain the expectations that derive from filing a proof of claim. Filed proofs of claim are deemed allowed. 11 U.S.C. § 502(a). Unless a party in interest objects to a claim, the creditor needs to do nothing in order to preserve its rights under a confirmed plan. Of course, every creditor should anticipate that confirmation will define the debtor's obligations, and for this reason, a claimant may choose to participate in the confirmation process. But the Bankruptcy Code imposes no duty on creditors to vote on a plan or even to read a disclosure statement. Accordingly, 11 U.S.C. § 1126(a) directs only that the holder of a claim or interest "may accept or reject a plan." In deciding whether to review a proposed plan, creditors have no reason to expect that the plan will address obligations other than those of the debtor itself. Under these circumstances, the imposition of a third-party release would constitute consent by ambush. An "opt-out" approach creates an unacceptable trap for creditors having no reason to presume the inclusion of a third-party release into a plan.

In support of an "opt-out" approach, the Committee has presented the expert opinion of Dr. David G. Heffler, a licensed mental health counselor. Dr. Heffler advises

A-10

that some abuse victims might experience further trauma if they were pressured to consent to a third-party release. Additionally, he predicted that a requirement of actual consent "will be perceived as a *coercive* and *controlling* process which will *force* a yet unknown number of plaintiffs to not comply and thus forgo their due settlement." These professional views help us to appreciate the impact of sexual abuse. But this Court cannot change the ruling of the Supreme Court in *Harrington v. Purdue Pharma, L.P.* A plan of reorganization can provide for a third-party release only with the actual consent of creditors.

Although this Court cannot disregard legal precedents regarding consent, we nonetheless recognize a need to address the concerns that Dr. Heffler identifies. Almost every abuse claimant is represented by counsel with extensive experience in handling personal injury claims. As part of their engagement, these attorneys have undertaken to assist their clients in evaluating the plan, including its provisions for a third-party release. To enhance preparations for the delivery of this representation, the Court will direct that prior to balloting on a plan, the Committee shall provide a copy of Dr. Heffler's report to each attorney for an abuse claimant. We do not see actual consent as a process any more burdensome than a settlement outside bankruptcy. In state court, a resolution of tort claims will typically require an exchange of general releases. The victim's consent to a general release in state proceedings is virtually identical to actual consent to a third-party release in bankruptcy.

The United States Trustee argues in addition that consent to a plan can never constitute consent to a third-party release. The Court is not prepared to reach this

A-11

BK20-10322CLB                                                                                    11

conclusion as an absolute rule.  Indeed, we can imagine instances where, with proper notice, creditors might be given an opportunity to cast a single vote to approve both the plan and a third-party release.  For now, however, we hold only that in their present forms, the plan and disclosure statement are insufficient in that they fail to require an expression of actual consent for the release of parishes and other affiliates.

Conclusion

Transparency is an essential feature of the reorganization process.  When a plan proposes a third-party release, the disclosure statement must identify this provision without ambiguity.  The expression of consent should be similarly deliberate. Accordingly, the debtor and Committee are directed to re-design a ballot that will require creditors expressly to "opt-in" to a release of third parties.[1]  The plan and disclosure statement should also be modified to reflect this approach and to correct any deficiencies in the previously filed documents.

The Court appreciates that this case was filed six years ago and that victims deserve a resolution.  Nonetheless, as in state court, actual consent is not an insurmountable obstacle to settlement.  We intend to take every reasonable step to expedite the confirmation process.  To this end, the plan proponents are directed to file an amended disclosure statement, plan and ballot no later than March 31, 2026. Thereafter, the Court will promptly schedule a further hearing on the debtor's motion

---

[1]In its objection, the United States Trustee asserts that the proposed plan contemplates a release for the benefit of contributing insurers.  At this time, the Court will limit its decision to the issue about which it invited argument, namely whether the absence of opposition can serve as proof of creditor consent.  We therefore reserve for future argument any challenge to whether the holding of *Purdue Pharma* would apply to a settling insurer injunction.

A-12

BK20-10322CLB 12

to set procedures that will advance this case toward confirmation.

So ordered.

Dated: February 27, 2026
Buffalo, New York

Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.



FILED

**February 27, 2026**

BANKRUPTCY COURT
BUFFALO, N.Y.

A-13

# Notice Recipients

District/Off: 0209–1            User: admin                    Date Created: 2/27/2026
Case: 1–20–10322–CLB           Form ID: pdforder              Total: 14

**Recipients of Notice of Electronic Filing:**
aty            Andrew Scott Rivera            arivera@bsk.com
aty            Charles J. Sullivan            csullivan@bsk.com
aty            Daniel J. Chiacchia            dan@716attorneys.com
aty            Ilan D Scharf            ischarf@pszjlaw.com
aty            Jeffrey Robert Anderson            jeff@andersonadvocates.com
aty            Karen B. Dine            kdine@pszjlaw.com
aty            Matthew Griffin Merson            mmerson@mersonlaw.com
aty            Stacey Benson            stacey@andersonadvocates.com
aty            Stephen Boyd            sboyd@steveboyd.com
aty            Stephen A. Donato            sdonato@bsk.com
aty            Timothy Patrick Lyster            tlyster@woodsoviatt.com

                                                                    TOTAL: 11


**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db             The Diocese of Buffalo, N.Y.            795 Main Street            Buffalo, NY 14203
pr             Charles Mendolera            c/o The Diocese of Buffalo, N.Y.            795 Main Street            Buffalo, NY 14203
smg            Office of the U.S. Trustee            300 Pearl Street, Suite 401            Olympic Towers            Buffalo, NY 14202

                                                                    TOTAL: 3

A-14

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In Re:                                                    Case No.: 1−20−10322−CLB
                                                          Chapter: 11
    The Diocese of Buffalo, N.Y.

                                                          Tax ID: 16−0743984

                    Debtor(s)

### NOTICE OF ENTRY

   **PLEASE TAKE NOTICE** of the entry of the Order referenced below, duly entered in
the within action in the Clerk's Office of the United States Bankruptcy Court, Western District
of New York on **February 27, 2026**. The Clerk of Court of the United States Bankruptcy
Court, Western District of New York, hereby certifies that a copy of the subject Order was sent
to all parties in interest herein as required by the Bankruptcy Code and the Federal Rules of
Bankruptcy Procedure.

Docket          Decision and Order. Signed on 2/27/2026. (RE: related document(s)4343
#4616:          Generic Motion filed by Debtor The Diocese of Buffalo, N.Y.). NOTICE
                OF ENTRY. (MJP)

Date: February 27, 2026                                   Lisa Bertino Beaser
                                                          Clerk of Court

Form ntcentry/Doc 4616
www.nywb.uscourts.gov

A-15

## Notice Recipients

| | | |
|---|---|---|
| District/Off: 0209−1 | User: admin | Date Created: 2/27/2026 |
| Case: 1−20−10322−CLB | Form ID: ntcentry | Total: 14 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| aty | Andrew Scott Rivera | arivera@bsk.com |
| aty | Charles J. Sullivan | csullivan@bsk.com |
| aty | Daniel J. Chiacchia | dan@716attorneys.com |
| aty | Ilan D Scharf | ischarf@pszjlaw.com |
| aty | Jeffrey Robert Anderson | jeff@andersonadvocates.com |
| aty | Karen B. Dine | kdine@pszjlaw.com |
| aty | Matthew Griffin Merson | mmerson@mersonlaw.com |
| aty | Stacey Benson | stacey@andersonadvocates.com |
| aty | Stephen Boyd | sboyd@steveboyd.com |
| aty | Stephen A. Donato | sdonato@bsk.com |
| aty | Timothy Patrick Lyster | tlyster@woodsoviatt.com |

TOTAL: 11

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | |
|---|---|---|---|---|
| db | The Diocese of Buffalo, N.Y. | 795 Main Street | Buffalo, NY 14203 | |
| pr | Charles Mendolera | c/o The Diocese of Buffalo, N.Y. | 795 Main Street | Buffalo, NY 14203 |
| smg | Office of the U.S. Trustee | 300 Pearl Street, Suite 401 | Olympic Towers | Buffalo, NY 14202 |

TOTAL: 3

A-16

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
---------------------------------------------------------

In re

    THE DIOCESE OF BUFFALO, N.Y.,          BK 20-10322 CLB


             Debtor.               <u>DECISION & ORDER</u>
---------------------------------------------------------

        Bond, Schoeneck & King, PLLC
        Stephen A. Donato, Esq., Charles J. Sullivan, Esq.,
        Grayson T. Walter, Esq., Brendan M. Sheehan, Esq., of counsel
        One Lincoln Center
        Syracuse, New York 13202-1355
        Attorneys for The Diocese of Buffalo, N.Y.

        Pachulski Stang Ziehl & Jones LLP
        Ilan D. Scharf, Esq., James I. Stang, Esq.,
        Iain A.W. Nasitir, Esq., Karen B. Dine, Esq., of counsel
        780 Third Avenue, 34th Floor
        New York, New York 10017
        Attorneys for Official Committee of Unsecured Creditors

        Office of the U.S. Trustee
        Joseph W. Allen, Esq., Jill M. Zubler, Esq., of counsel
        Olympic Towers
        300 Pearl Street, Suite 401
        Buffalo, New York 14202

        Steve Boyd, PC
        Stephen Boyd, Esq., of counsel
        2969 Main St., Suite 100
        Buffalo, New York 14214
        Attorneys for Various Claimants

        Lipsitz Green Scime Cambria
        Amy C. Keller, Esq., of counsel
        42 Delaware Avenue, Suite 120
        Buffalo, New York 14202
        Attorneys for Various Claimants

        Woods Oviatt Gilman LLP
        Timothy P. Lyster, Esq., of counsel
        1900 Bausch & Lomb Place
        Rochester, New York 14604
        Co-Counsel for Parish Steering Committee

A-17

BK20-10322CLB                                                                                  2

Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.

On February 27, 2026, this Court issued a decision holding that a reorganization plan in Chapter 11 can release claims against third parties only with the express consent of affected creditors. We found that the mere opportunity to "opt-out" of a settlement cannot suffice to establish such acquiescence. *See In re Diocese of Buffalo, N.Y.*, ___ B.R. ___, 2026 WL 585099 (Bankr. W.D.N.Y 2026). Both the Official Committee of Unsecured Creditors (the "Committee") and the Diocese of Buffalo, N.Y. (the "Diocese" or "Debtor") now move for reconsideration. Alternatively, the Committee requests authorization to take an expedited appeal to the Court of Appeals and proposes the issuance of guidelines for a "pre-packaged" plan of reorganization. Meanwhile, the Debtor requests an extension of time to file an amended disclosure statement and plan.

We incorporate by reference our opinion of February 27, inasmuch as it recites the relevant facts and reasoning of the Court. In support of their motions for reconsideration, the Debtor and Committee direct our attention to two recent decisions, both of which implied consent from a failure to opt-out of a proposal for third-party releases. *See In re Container Store Group, Inc.*, ___ B.R. ___, 2026 WL 395898 (S.D.Tex. 2026) and *In re Lutheran Home and Services for the Aged, Inc.*, ___ B.R. ___, 2026 WL 626606 (Bankr. N.D.Ill. 2026). Unquestionably, these rulings confirm the existence of divergent views. We respect these other opinions, but are persuaded more by the reasoning of those cases that have insisted that creditors opt-in to proposals for a release of third parties. Nothing in the motions for reconsideration

A-18

BK20-10322CLB                                                                           3

has changed our position that silence does not imply consent.  Seeing no need to repeat our prior analysis, we now reiterate the same conclusion.  Accordingly, the motions for reconsideration are denied.

Although this Court will not change its ruling on requirements for consent, the split of authority suggests a need for appellate review.  In the aftermath of the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), trial courts have operated without the benefit of controlling precedents on this issue. Consequently, we accept the Committee's request for an expedited appeal to the Second Circuit Court of Appeals.

In the Second Circuit, bankruptcy appeals are normally presented first to the District Court and only then to the Court of Appeals.  *See*  28 U.S.C. § 158(a). However, in special instances, 28 U.S.C. § 158(d)(2) also authorizes a more direct review:

> "The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court . . . acting on its own motion or on the request of a party to the judgment, order, or decrees described in such first sentence . . . certify that-
>> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

A-19

BK20-10322CLB                                                                                                    4

>and if the court of appeals authorizes the direct appeal
>of the judgment, order, or decree."

Here, a direct appeal is warranted under all of the alternative grounds stated in the statute. The requirements of consent have yet to be resolved by either the Court of Appeals or the Supreme Court. Indeed, in *Purdue Pharma*, the Supreme Court chose not "to express a view on what qualifies as a consensual release." 603 U.S. at 226. Moreover, as shown by the exigencies of the present case, the issue of consent is a matter of public importance. A direct appeal is further justified by the conflicting decisions that Bankruptcy Courts have rendered in this circuit and across the country. Additionally, a decision on any appeal would materially advance the progress of this case, which has already been open for more than six years. Otherwise, we face the prospect of multiple layers of appeal that might cause even greater delay.

In our decision of February 27, we agreed with the view of District Judge Cote that "outside of rare exceptions, consent cannot be implied from silence." *In re GOL Linhas has Aéreas Inteligentes S.A.*, 675 B.R. 125, 131 (S.D.N.Y. 2025). Her ruling is now under appeal to the Second Circuit. An expedited appeal by the Diocese and Committee may also allow an opportunity for the Circuit to review the decision of this Court at the same time that it examines the similar matter that it has under consideration.

No matter how we set the requirements for consent, the Debtor might wish to consider other options for the release of claims against third parties. In particular, the Diocese of Buffalo identifies a need to resolve claims that are being asserted not only against the Debtor, but also against affiliated entities such as parishes. In conjunction

A-20

with two other bankruptcies of a Catholic diocese, parishes initiated separate bankruptcy proceedings for the purpose of confirming a pre-packaged plan of reorganization. This Court offers no advice about the utility of a pre-packaged proceeding in Chapter 11. Nonetheless, to facilitate this option, we intend to issue a case management order setting guidelines for its exercise. Parties with an interest in the present bankruptcy proceeding will be allowed until May 1, 2026, to offer any suggestions regarding the content of such an order.

In its Decision and Order of February 27, this Court directed the Debtor and Committee to file a first amended disclosure statement and plan by March 31, 2026. The Diocese now seeks an extension of this deadline. The anticipated appeal may delay the final approval of consent procedures, but that is no reason to defer the consideration of other issues. Whether they incorporate an "opt-in" or "opt-out" approach, a revised disclosure statement and plan will provide a framework for review. Our goal is to address other open disputes, so that upon completion of the appellate process, we might proceed more promptly toward confirmation. In response to the Court's question, counsel for the debtor stated that they could provide revised documents by June 1. Finding that this timetable falls within a range of reasonable expectation, we will now direct the filing of an amended disclosure statement and plan by that date.

Conclusion

The motions for reconsideration of the Decision and Order of February 27, 2026, are denied. However, for the reasons stated herein, this Court certifies grounds for a

A-21

BK20-10322CLB                                                                                    6

direct appeal to the Court of Appeals. All parties with an interest in this case are invited by May 1, 2026, to submit suggestions for a case management order that will apply to pre-packaged bankruptcy filings by parishes or other affiliated entities. The deadline for submission of an amended disclosure statement and plan is extended to June 1, 2026.

    So ordered.

Dated: April 3, 2026
      Buffalo, New York

    Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.



FILED

APR - 3 2026

BANKRUPTCY COURT
BUFFALO, NY

A-22

# Notice Recipients

| District/Off: 0209–1 | User: admin | Date Created: 4/3/2026 |
|---|---|---|
| Case: 1–20–10322–CLB | Form ID: pdforder | Total: 14 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | Joseph W. Allen | USTPRegion02.bu.ecf@usdoj.gov |
| aty | Charles J. Sullivan | csullivan@bsk.com |
| aty | Grayson T. Walter | gwalter@bsk.com |
| aty | Iain A.W. Nasatir | inasatir@pszjlaw.com |
| aty | Ilan D Scharf | ischarf@pszjlaw.com |
| aty | James I. Stang | jstang@pszjlaw.com |
| aty | Karen B. Dine | kdine@pszjlaw.com |
| aty | Stephen Boyd | sboyd@steveboyd.com |
| aty | Stephen A. Donato | sdonato@bsk.com |
| aty | Timothy Patrick Lyster | tlyster@woodsoviatt.com |

TOTAL: 10

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | |
|---|---|---|---|---|---|
| db | The Diocese of Buffalo, N.Y. | 795 Main Street | Buffalo, NY 14203 | | |
| pr | Charles Mendolera | c/o The Diocese of Buffalo, N.Y. | 795 Main Street | Buffalo, NY 14203 | |
| aty | Lipsitz Green Scime Cambria LLP | 42 Delaware Avenue | Suite 120 | Buffalo, NY 14202 | |
| smg | Office of the U.S. Trustee | 300 Pearl Street, Suite 401 | Olympic Towers | Buffalo, NY 14202 | |

TOTAL: 4

A-23

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In Re:

    The Diocese of Buffalo, N.Y.

               Debtor(s)

Case No.: 1–20–10322–CLB
Chapter: 11

Tax ID: 16–0743984

## NOTICE OF ENTRY

    **PLEASE TAKE NOTICE** of the entry of the Order referenced below, duly entered in the within action in the Clerk's Office of the United States Bankruptcy Court, Western District of New York on **April 3, 2026**. The Clerk of Court of the United States Bankruptcy Court, Western District of New York, hereby certifies that a copy of the subject Order was sent to all parties in interest herein as required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

Docket #4694:     Decision and Order Denying Motions to Reconsider, Granting Motion for Request for Certification of Direct Appeal. Signed on 4/3/2026 (RE: related document(s)4654 Motion to Reconsider filed by Debtor The Diocese of Buffalo, N.Y., 4655 Amended Motion filed by Debtor The Diocese of Buffalo, N.Y., 4657 Motion to Reconsider filed by Creditor Committee Official Committee of Unsecured Creditors, Motion for Request for Certification of Direct Appeal). NOTICE OF ENTRY. (MGB)

Date: April 3, 2026                         Lisa Bertino Beaser
                                          Clerk of Court

Form ntcentry/Doc 4694
www.nywb.uscourts.gov

A-24

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0209−1 | User: admin | Date Created: 4/3/2026 |
| Case: 1−20−10322−CLB | Form ID: ntcentry | Total: 14 |

**Recipients of Notice of Electronic Filing:**
| | | |
|---|---|---|
| ust | Joseph W. Allen | USTPRegion02.bu.ecf@usdoj.gov |
| aty | Charles J. Sullivan | csullivan@bsk.com |
| aty | Grayson T. Walter | gwalter@bsk.com |
| aty | Iain A.W. Nasatir | inasatir@pszjlaw.com |
| aty | Ilan D Scharf | ischarf@pszjlaw.com |
| aty | James I. Stang | jstang@pszjlaw.com |
| aty | Karen B. Dine | kdine@pszjlaw.com |
| aty | Stephen Boyd | sboyd@steveboyd.com |
| aty | Stephen A. Donato | sdonato@bsk.com |
| aty | Timothy Patrick Lyster | tlyster@woodsoviatt.com |

TOTAL: 10

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
| | | | | | |
|---|---|---|---|---|---|
| db | The Diocese of Buffalo, N.Y. | 795 Main Street | Buffalo, NY 14203 | | |
| pr | Charles Mendolera | c/o The Diocese of Buffalo, N.Y. | 795 Main Street | Buffalo, NY 14203 | |
| aty | Lipsitz Green Scime Cambria LLP | 42 Delaware Avenue | Suite 120 | Buffalo, NY 14202 | |
| smg | Office of the U.S. Trustee | 300 Pearl Street, Suite 401 | Olympic Towers | Buffalo, NY 14202 | |

TOTAL: 4

A-25

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NEW YORK

In re:

THE DIOCESE OF BUFFALO, N.Y.,

Debtor.

Chapter 11

Case No. 20-10322 (CLB)

### CERTIFICATION OF DIRECT APPEALS TO
### THE COURT OF APPEALS FOR THE SECOND CIRCUIT

The Diocese of Buffalo, N.Y (the "Diocese") (Dkt No. 4723) and the Official Committee of Creditors (the "Committee") (Dkt No. 4722) have each filed a Notice of Appeal of the Court's: (1) Decision and Order Denying Motions to Reconsider, Granting Motion for Request for Certification of Direct Appeal entered April 3, 2026 [Dkt No. 4694]; and (2) Decision and Order entered February 27, 2026 [Dkt No. 4616]. The Court within its April 3, 2026 Decision and Order granted the joint request of the Diocese and the Committee for direct appeal to the Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 158(d)(2). The court is certifying the appeal for direct review for the reasons stated in its April 3, 2026 order.

Dated: May 8 , 2026
Buffalo, New York

_____
Hon. Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.



FILED
MAY – 8 2026
BANKRUPTCY COURT
BUFFALO, NY

A-26

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In Re:                                              Case No.: 1–20–10322–CLB
                                                    Chapter: 11
    The Diocese of Buffalo, N.Y.

                                                    Tax ID: 16–0743984

                Debtor(s)

## NOTICE OF ENTRY

    **PLEASE TAKE NOTICE** of the entry of the Order referenced below, duly entered in the within action in the Clerk's Office of the United States Bankruptcy Court, Western District of New York on **May 8, 2026**. The Clerk of Court of the United States Bankruptcy Court, Western District of New York, hereby certifies that a copy of the subject Order was sent to all parties in interest herein as required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

Docket #4784:    Order Approving Request for Certification of Direct Appeal to Court of Appeals. Signed on 5/8/2026. (RE: related document(s)4722 Notice of Appeal filed by Creditor Committee Official Committee of Unsecured Creditors, 4723 Notice of Appeal filed by Debtor The Diocese of Buffalo, N.Y.). NOTICE OF ENTRY. (MJP)

Date: May 8, 2026                                   Lisa Bertino Beaser
                                                    Clerk of Court

Form ntcentry/Doc 4784
www.nywb.uscourts.gov

A-27

# Notice Recipients

District/Off: 0209−1            User: admin               Date Created: 5/8/2026
Case: 1−20−10322−CLB           Form ID: ntcentry          Total: 5

**Recipients of Notice of Electronic Filing:**
aty        Ilan D Scharf        ischarf@pszjlaw.com
aty        Stephen A. Donato        sdonato@bsk.com

                                                                    TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db         The Diocese of Buffalo, N.Y.        795 Main Street        Buffalo, NY 14203
pr         Charles Mendolera        c/o The Diocese of Buffalo, N.Y.        795 Main Street        Buffalo, NY 14203
smg        Office of the U.S. Trustee        300 Pearl Street, Suite 401        Olympic Towers        Buffalo, NY 14202

                                                                    TOTAL: 3

A-28

## Notice Recipients

District/Off: 0209–1                    User: admin                    Date Created: 5/8/2026
Case: 1–20–10322–CLB                    Form ID: pdforder                    Total: 5

**Recipients of Notice of Electronic Filing:**
aty         Ilan D Scharf        ischarf@pszjlaw.com
aty         Stephen A. Donato        sdonato@bsk.com

TOTAL: 2

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**
db          The Diocese of Buffalo, N.Y.        795 Main Street        Buffalo, NY 14203
pr          Charles Mendolera        c/o The Diocese of Buffalo, N.Y.        795 Main Street        Buffalo, NY 14203
smg         Office of the U.S. Trustee        300 Pearl Street, Suite 401        Olympic Towers        Buffalo, NY 14202

TOTAL: 3